# Harper *v.* Calhoun.

Stock in a bank is not a set-off against a note given to the bank.

One director cannot bind a bank by contract without express authority from the board.

A direction to an agent by letter to ascertain of the directory whether the principal will be permitted to relinquish his stock in a bank, to the amount of his liabilities to the institution, is not such a proposition as will bind the bank, if accepted.

The custom of a bank may be proven for the purpose of interpreting a contract; but it is no evidence to establish one where an express contract would be necessary.

When the bills of a bank are relied on as a set-off, it must appear that they were in court on the trial.

The cashier of a bank is the proper officer to transfer and indorse the bills receivable of the bank, and his indorsement is *prima facie* evidence of his authority from the bank.

IN ERROR from the circuit court of the county of Jasper.

This was an action of assumpsit, brought by the plaintiff, as assignee of the Mississippi and Alabama Railroad Company, against the defendants, on a note for three thousand dollars, dated on the 3d day of May, 1838, and payable twelve months thereafter. It was averred in the declaration that on the 28th day of September, 1839, the said Mississippi and Alabama Railroad Company, through and by its proper officer, duly authorized, to wit: Zebulon P. Wardell, cashier, by the way and style of "notice of demand and non-payment waived, 28th September, 1839, Z. P. Wardell, cashier," indorsed said note to plaintiff.

The defendants plead non-assumpsit, and it was agreed by plaintiff's attorney that under this plea defendants should have to offer evidence of payment and set-off. The defendants filed an account, purporting to have been due from the bank to H. Calhoun before the date of the assignment, consisting of sundry items, to wit: forty-two hundred dollars paid on one hundred and

forty shares of capital stock owned by said Calhoun; to one hundred and forty shares of said stock, on which thirty per cent. had been paid, transferred to said company by said H. Calhoun; and to forty-two hundred dollars money had and received by said bank to the use of said Calhoun, and to forty-two hundred dollars paid, laid out and expended by said Calhoun for said bank—all being the same item differently stated. Also, to services rendered by said Calhoun for said bank for one year, four hundred dollars; also, to thirty-six hundred dollars lent and advanced by said H. Calhoun to said bank; also, to three thousand dollars in notes on said company.

Said Calhoun also gave notice that he would require proof on the trial that plaintiff was the *bona fide* holder of said note, and that the said Wardell had power and authority to indorse the same, and that said company is or ever was a corporation. On the trial the plaintiff read as evidence to the jury the note and indorsement thereon, and offered no other evidence. The defendant then offered to prove the account, and thereupon the plaintiff's counsel "moved the court to exclude all proof of the items charged by said defendant relative to the one hundred and forty shares of capital stock in said company, on the ground that the company were not properly chargeable with the stock before a final liquidation of the affairs of the company and payment of its liabilities, which had not been proved;" which motion was overruled. The defendant then offered to prove, by Samuel Grayson, that Henry Calhoun, on the 11th May, 1839, sold to Grayson his right to three shares of capital stock in said company, out of one hundred and forty shares then represented to Grayson to be owned by Calhoun in the company, and that Grayson at that time bore from Paulding to Brandon a letter from Calhoun to the bank, in these words:

"Paulding, Miss., 11th May, 1839.

"I have this day bargained and sold to Samuel Grayson three shares capital stock in the Mississippi and Alabama Railroad Company, which are held in my name, out of one hundred and forty shares, for which I mortgaged to secure the payment on one hundred and thirty-seven. The president and directors are hereby authorized to issue scrip in favor of Samuel Grayson for the three

shares aforesaid, upon which thirty per cent. has been paid, and oblige your obedient servant.                    H. CALHOUN."

And that this paper or letter was handed to Mr. Wardell, the cashier, in presence of Mr. W. H. Shelton, supposed by the witness to be the president; that the scrip was not issued to him (witness) for the three shares, Wardell and Shelton alleging that Calhoun's scrip for one hundred and forty shares of stock, upon which thirty per cent. had been paid, alluded to in said writing, had been in the possession of the company, but had been mislaid and could not then be found.   To the admission of which statement as testimony the plaintiff's attorney objected, on the ground that it was not proved that the books of subscription and stock books of the bank were lost or mislaid, or could not be produced, or that Wardell and Shelton could not be produced as witnesses. The court overruled the objection, and the plaintiff's attorney excepted.

The third exception was in substance as follows:

Be it remembered, that on the trial the defendants introduced S. J. Johnston, to prove that Johnston on the 5th of October, 1839, handed to Wardell, the cashier of the mother bank at Brandon, then on a visit at Paulding, the following letter from defendant Calhoun, to wit:

Paulding, October 5th, 1839.

Mr. Wardell will please examine the receipt sent on by Captain Hart, for one hundred and forty shares of bank stock in the Mississippi & Alabama Railroad Co., and issue scrip for the same in my favor; also ascertain from the directory if I will not be permitted to relinquish stock to the amount of my liabilities to the institution as principal.   You will find the receipt among the papers sent with the mortgages, and please inform me as to their determination upon this subject, and oblige yours respectfully,

H. CALHOUN.

Witness further stated that Wardell received the letter from him, and returned to Brandon without giving any reply thereto, and that some time afterwards, witness could not say at how long an interval, he saw the letter in possession of defendant Calhoun, with the following memorandum written underneath, and not signed by any one, but which plaintiff admitted was in the

18*

hand writing of R. G. Crozier, a director of said company, to wit: "the cashier will say to H. Calhoun that the board agree to the above proposition." But the plaintiff refused to recognize any authority in Crozier from said company, to make said memorandum, nor was any such authority proved by defendants, nor was it proved by other evidence that said memorandum was made by said Crozier, previous to the 12th of October, 1839, the day of the service of the writ in this cause on defendant Calhoun. To the admission of all which evidence as proof of payment before notice of assignment given to defendant by this suit, the plaintiff by counsel objected, which objection was overruled by the court, and the same permitted to be given as evidence to the jury.

The defendants also offered to prove by one of the directors of the company, by R. Jones, who acted as notary for the bank of said company at Paulding in protesting paper, and by sundry other witnesses not concerned with the company, that it was the usage and custom of the Brandon Bank to receive from their debtors, who were subscribers for stock or holders of certificates of the stock of the company, payment of their debts in such certificates, but did not adduce any evidence from the company or any resolution adopted by its directory authorizing such payment; to the introduction of all which proof, " the plaintiff objected, but the objection was overruled." " It was also proven that Calhoun had deposited in his own name two thousand dollars, in the branch of the bank at Paulding before the transfer, in Brandon money, collected by him as attorney at law for a client, and that he afterwards paid twenty-three or twenty-four hundred dollars in Brandon money, to the same client out of his own pocket. The defendant introduced R. Jones, who acted as notary of the bank at Paulding, who swore that he transferred his own stock to the bank by handing over his scrip; and witness said there was no regular mode of transfer of stock in the bank known to him. The defendant also proved that defendant Calhoun was the purchaser and holder of one hundred and forty shares of stock in said bank before the transfer of note sued on, upon which thirty per cent. had been paid. And also introduced the following paper, signed by the cashier of the branch of said company at Paulding, to wit: "Henry Calhoun is the owner of one hundred and forty shares of capital

Harper *v.* Calhoun.

stock in the Mississippi & Alabama Railroad Co., purchased of sundry persons, upon which there has been thirty per cent. paid, amounting to four thousand two hundred dollars; he held a check for three thousand six hundred dollars from the cashier of the parent bank at Brandon, dated 22nd of January, 1840, upon this branch, which has been presented and accepted.

Branch Bank Paulding, 8th February, 1840.

BENJ. HUNT, Cashier."

The plaintiff moved the court to instruct the jury:

1. That Wardell's and Shelton's declarations to Mr. Grayson, in themselves were no evidence of Calhoun's being a stock holder, unless it be proved that the books kept as evidence of stock in the bank were lost.

2. That the admissions of Wardell, without authority from the bank proven to the jury, are not conclusive in themselves to prove an agreement by the corporation to receive stock from defendant Calhoun in payment of his debt. Both which were refused.

On motion of defendants, the court instructed the jury that if they believed from the evidence, it was the custom of the bank to receive bank stock in liquidation of debts due it, and that H. Calhoun duly transferred his bank stock to it in payment of bank liabilities, before notice of the transfer of the note sued on, and that it was accepted by the bank, they must find for defendant, to which plaintiff accepted. Jury found for defendant.

LEA & LEA for plaintiff in error.

The plea of the defendants being the general issue not sworn to, there can be no doubt, it is believed, as to the plaintiff's title to the note sued on, and his right to maintain his action. The defendants themselves proved that Wardell was the cashier of the bank; as such, he had authority to assign the note. A different rule, it is true, was laid down in the cases, Hallowell Bank *v.* Hamblin, 14 Mass. Rep 180, and Hartford Bank *v.* Barry, 17 Mass. Rep. 97. But the doctrine of those cases is not recognized by the highest authority. Fleckner *v.* United States Bank, 8 Wheaton, 360–61 ; Ridgway *v.* Farmer's Bank of Bucks county, 12 Serg. & Rawle, 265 ; Wild *v.* the Bank of Passamaquoddy, 3 Mason's Rep. 506 ;

Bank of Columbia *v.* Patterson, 7 Cranch, 299. The principle is now well settled, that the cashier of a bank has *prima facie* authority *vertute officii* to transfer and indorse negotiable securities held by the bank, for its use and in its behalf; and no special authority for this purpose is necessary to be proved. Angell & Ames on Cor. 172–3; 2 Kent. Com. 289, *et seq.*

The transaction on which the defendants mainly relied as a payment, could not be recognized for that purpose, were there no doubt of its having actually taken place. Calhoun claimed to be the owner of one hundred and forty shares of stock in the bank; and it is urged that before he had notice of the assignment of the note, he paid it by making a transfer of his stock to the corporation. To this it may be replied, first, that he could not in law pay the note by a transfer of his stock; and secondly, no transfer of stock was made by him to the bank for the purpose of paying the note. If these positions be well taken, there is error in the instructions given by the court below, and also in the finding of the jury, for which the judgment will be reversed, and it will not be necessary to rely on other points presented by the numerous bills of exception. First, then, as to the right of Calhoun to pay the note by a transfer of his stock to the bank. It is now the well established doctrine that the capital stock of a banking corporation is a trust fund for the benefit of its creditors. During the existence of the corporation, the capital stock is the sole property of the corporation and can be applied only to the payment of its debts. The creditors have the first claims upon it, a prior exclusive equity; and the stockholders have no rights until all the other creditors are paid. This doctrine is so emphatically and cogently maintained by Mr. Justice Story in Wood *v.* Dummer, 3 Mason's Rep. 308, that we forbear to submit any argument in further illustration of its correctness or importance.

It matters not, therefore, what may have been the usage and custom of the Brandon Bank, so far as this question is concerned. Had the transfer been made in strict conformity to an express by-law of the corporation, it would still be void as against creditors, on account of its inherent fraudulency and illegality. A by-law of kindred character received the marked condemnation of the court for the correction of errors in New York. The chief jus-

tice said he would not stop to inquire how it originated. He pronounced it contrary to the principles of law and equity, legally fraudulent and therefore void. Glee *v.* Bloom, 19 John. Rep. 478.

Having shown conclusively that Calhoun never made a transfer of his stock to the bank, it could not, of course, have been accepted by the bank in payment of the note. It is immaterial whether the memorandum by Crozier on the letter of Calhoun was the act of the bank or not. The most that can be made of it is, that the bank was willing to permit Calhoun to pay his debts to the bank by a relinquishment of his stock. He desired to know whether that could be done, and the bank told him it could.

WORK and G. CALHOUN for defendant in error.

1. A preliminary question arises in this case, to wit: Did the appellant, plaintiff in the court below, make out, by legal evidence, a good cause of action against the appellees? If not, he cannot, with reason, complain of any subsequent errors, growing out of the evidence offered by the appellees; because such evidence, and the opinion of the court below thereon, in that event were supererogation, and he, not being entitled to a verdict, could not be prejudiced thereby. The only evidence which he introduced was the note and assignment thereon, reading in these words: "notice of demand and non-payment waived, 28th September, 1839, Z. P. Wardell, cashier." This does not even purport to be the act of the Mississippi and Alabama Railroad Company, nor could the court or jury officially know of what corporation Wardell was cashier, by what power he made the indorsement, or who he intended to bind thereby. The appellant, therefore, showed no title to the note. Unless this case can be brought within the statute of this state, passed in 1836, (H. & H. 595,) no doubt can arise of the insufficiency of the proof. If that statute is construed to dispense with the proof of agency wherever it may be averred in the declaration, unless the same is denied by plea verified by oath, it will be impossible, in many cases, for the defendant to procure a fair trial, without committing at least moral perjury; for, as powers of attorney are often known to the principal and agent only, how is it possible for a defendant, when a power is averred, to know whether it was given or not?

But a cashier of a bank has not *ex officio* authority to transfer its notes. Hollowell and Augusta Bank *v.* Hamlin *et al.* 14 Mass. Rep. 180; Hartford Bank *v.* Barry, 17 Mass. Rep. 97. But if he had such power, still the act itself must appear to be the act of the bank by him.

The charter of the Mississippi and Alabama Railroad Company does not give the cashier power to transfer its notes. The only mention made of that officer in the charter is in the 19th section, (see Session Acts of 1836, p. 163,) which gives no such power. The 21st section provides that a majority of the directors, of whom the president shall be one, shall constitute a board for the transaction of business. As the charter gave no such power, it will not be inferred that the directors gave it. If powers could be inferred, no man would be secure in his property. A power must in all cases be proved before a person can be divested of his rights by the act of another.

The second bill of exception questions the competency of the testimony of the witness, Grayson. He proves the delivery of a letter to the company on the subject of said stock, and the admission, by the cashier and president, that H. Calhoun owned said stock; that thirty per cent. had been paid on it; that the scrip was in the possession of the company, and had been mislaid. Now, it was clearly material and proper, on an issue of payment or accord and satisfaction, for the appellees to show that thirty per cent. had been paid on the stock owned by H. Calhoun, because this went to show the value of the stock, and that, if received as such, it was a satisfaction of the note.

Under the plea of non-assumpsit, which was in, an accord and satisfaction can be given in evidence. 1 Saunders on Pl. and Ev. top p. 27. It was competent to prove the delivery of the letter of H. Calhoun, and the reply of the officers on the receipt thereof. See 1 Starkie's Ev. top p. 55; ibid. 278. "The answer of a clerk at a banking house, transacting the business of his principals, is evidence against the latter." 2 Starkie's Ev. top p. 32; Angel & Ames on Corp. 395. It is often difficult to discriminate between acts and admissions which form part of the *res giste*, and those which fall within the description of *res inter alias acta*. The observations or admissions of an officer of a corporation, as an in-

Harper *v.* Calhoun.

dividual when not engaged in the business of the corporation, would probably fall within the latter description; but his solemn answers, when interrogated at the banking house, in his official capacity, have always been held competent; and, whenever the competency of evidence is doubtful, the rule is to permit it to go to the jury. Shannon *v.* Kenny, 1 Marsh. Rep. 3. Clerks in a store, and officers of a bank, are considered, in law, as agents, when doing business properly belonging to their station; and the admissions of an agent, acting within the scope of his authority, are as conclusive against the principal as if made by himself. See 1 Saunders on Pl. and Ev. top p. 63, and authorities there cited.

The third bill of exceptions questions the competency of the witness Johnston's testimony, and the letter of H. Calhoun to the cashier of the company, and the reply thereto. We can perceive no valid objection to this evidence. The delivery of the letter and the unsigned reply thereto, and the possession of the letter and reply afterwards by H. Calhoun, were facts proper to be left to the jury. The jury had a right to infer that Wardell laid the proposition before the board of directors, from the fact that it was sent back with that answer on it, and that the board had accepted the proposition. It was not necessary to call the director as a witness who wrote the reply, because if he had been called by the appellants and had swore that he was not authorized to make it, still it is believed to be clear that the appellees had a right to present the fact of the delivery of the letter and the reply to it to the jury. If A writes a letter to B, and receives a reply not signed and not in the hand writing of B, is the presumption not violent that B authorized the reply? The entries or declarations of third persons are evidence when they are so connected with the acts or conduct of others as to afford presumption, independently of any credit attached to them as mere recitals or statements, of some other fact. 1 Saunders' Pl. and Ev. top p. 67; see also 1 Starkie's Ev. top. p. 307. "A letter written by a stranger to a testator, acknowledging the receipt of a will, is evidence to show that such a will had been sent by the testator." 1 Starkie, top p. 278.

The well known principle that the usage of a corporation may be proved, is recognized by this court in the case of the Planters' Bank and Snodgrass.

It was also competent to prove that Calhoun was the owner of the one hundred and forty shares of stock, and with this view it was proper to offer as evidence the certificate of the cashier of the Paulding branch.

The next question is, did the court err in refusing the instructions asked for by the appellants. The first, in substance, was, that the declarations of Shelton and Wardell to Grayson were in themselves no evidence of Calhoun being a stockholder, unless it be proved that the books of the company were lost. It appears from the record that defendants proved that H. Calhoun owned the stock by other testimony; but, as before remarked, the admission of the officers was competent, and authorities have been referred to to prove it. The books, to be the best evidence, must have been shown to contain a record of the transfer of the stock to Calhoun, which was not proven. Besides, the defendants were not bound to rely on the books, but could legally disprove and contradict them.

The second instruction asked for and refused was, that the admissions of Wardell, without authority of the bank, proven to the jury, are not conclusive in themselves to prove an agreement by the company to receive stock by defendant Calhoun in payment of his debt. It was not for the court to say whether the evidence was conclusive or not. That was a question for the jury alone. It is a well settled rule that an appellate court will not set aside a verdict which the court below refused to disturb, on the ground that it is contrary to evidence, unless it is glaringly and manifestly so. 2 Bibb, 64, 211; 1 Bibb, 241 ; 3 Littell's Rep. 14, 69, 189. In such cases much is due to the opinion of the judge of the court below, who presided, heard all the evidence, and is presumed to know more of the weight due to it, than this court can possibly know.

But in this case it is confidently believed that the jury found as this court would find, if called upon to decide the facts. We will not dwell on the evidence. The court will perceive that the evidence presented two questions of fact to the jury:

1. Whether there was an accord and satisfaction or payment of the note, by the stock; and,

2. Whether there was fraud in the transfer.

Harper *v.* Calhoun.

On the first point it was in proof that it was, shortly before this note was assigned, the practice and usage of the bank to take stock for debts due it, allowing for the stock the amount which had been paid on it; that H. Calhoun had purchased about as much stock as would pay his note, and the jury had a right to infer that he did it for that purpose, and was induced to do it by this usage of the bank; that he made a written proposition to the bank to surrender his stock for the note, and that he had previously placed his scrip in the possession of the bank; that he afterwards received back from the bank his proposition, with this reply, "The cashier will say to H. Calhoun, that the board agree to the above proposition." Now, were not the jury authorized, from the fact of sending this proposition back with this answer, to infer that the bank had agreed to it? No written transfer of the scrip was necessary to consummate this transaction; if it were, the proposition itself was, when accepted, a legal transfer, and if they parted with the possession of it, they did not thereby rescind the contract.

In questions of fraud, no circumstance ought to be excluded from the jury that tends in the remotest degree to bring it to light, even evidence of general character is admissable and relevant. Shannon *v.* Kinney, 1 Marshall's Rep. 3, note a; 3 Cain's Rep. 120. Matters of history juries and judges are presumed to know, and if that of the Mississippi and Alabama Rail road Company marks it with any peculiar trait, the jury were authorized to notice it in their deliberations.

*Per Curiam.*

The plaintiff, as indorsee, instituted this suit on a promissory note for three thousand dollars, made payable to the Mississippi and Alabama Railroad Company. The defendants obtained a verdict in their favor, and the plaintiff moved for a new trial, which being refused, he took his exception.

The principal question in the case arises out of the sufficiency of an offset claimed by defendant Calhoun. It seems that Calhoun claimed to be the owner of one hundred and forty shares of the capital stock of the bank, on which thirty per cent. had been paid, amounting to four thousand two hundred dollars. He filed an account or bill of particulars, in which the bank is charged

with this amount, and also with a certain amount of notes, the issues of the bank.

The mere ownership of the stock did not of itself entitle the party to avail himself of it as an offset against a note given to the bank. But the defendants relied on, and attempted to establish a special agreement on the part of the bank to take the stock in payment of the note. If such agreement had been made and consummated before the transfer of the note, it would have extinguished the debt due from Calhoun; but no agreement of the kind is satisfactorily shown. The proof as to the ownership of the stock is vague; and as to the agreement, it is wholly insufficient.

The evidence of the agreement to take the stock in payment of the debt, consisted of a letter addressed to the cashier by Calhoun, in which he says, "ascertain from the directory if I will not be permitted to relinquish stock to the amount of my liabilities to the institution as principal." This did not even amount to a proposition to relinquish; it was a mere request to ascertain whether such relinquishment would be acceptable. The only evidence of the willingness of the bank to take such relinquishment, was a written memorandum seen afterwards by the witness on the same letter, then in possession of Calhoun, signed by no one, but admitted to be in the hand writing of Crozier, a director, which is in the following words: "The cashier will say to H. Calhoun that the board agree to the above proposition." This was not a binding acceptance of Calhoun's proposition, even if his inquiry should be taken as a proposition. Crozier was but a single director, not capable of binding the board without express authority. It required the action of the board to make such a contract as that attempted to be established. But suppose the whole board had agreed, Calhoun's letter was not such an open proposition as to make its acceptance binding on him. If the board had agreed to receive his stock, still he was at liberty to relinquish or not. As further evidence of the agreement of the bank, witnesses were introduced, who proved that it was customary for the bank to take assignments of stock in payment of debts. The existence of this custom did not amount to a contract. If Calhoun had transferred the stock in payment of the note, it was a fact susceptible

Harper *v.* Calhoun.

of proof. The custom of a bank may be proven for the purpose of interpreting a contract, but it is no evidence to establish one when an express contract would be necessary, as it would in this case. The plaintiff objected to all this evidence as it was introduced; hence no objection is to be considered as waived.

There is a charge in the bill of particulars for so much money in the notes of the bank, but the notes do not seem to have been in court; it is consequently unnecessary to notice it further.

The right of the plaintiff to the note was called in question. It was indorsed in these words: "Notice of demand and non payment waived 28th of September, 1839. Z. P. Wardell, Cashier." It would seem from this that there was an intention to transfer the property of the note. It is presumed that the bank intended to waive the necessity of demand and notice. These words can mean nothing else. If the note is still the property of the bank, this memorandum on the back is unaccountable. If it is the property of the plaintiff, the meaning is plain. Wardell, as cashier, was the proper officer to transfer and indorse the bills receivable of the bank, and the defendants themselves proved that he was cashier. This indorsement must be regarded as sufficient to pass the interest in the note. The special indorsement is only explanatory of the nature of the contract between the indorser and indorsee, and does not qualify the indorser's right. We think, in any aspect of the case, the plaintiff has clearly shown himself to be entitled to a new trial.

Judgment reversed and *venire de novo* awarded.